**Charles GILBERT (97–5040) and Jennings Gilbert (97–5041), Petitioners–Appellants,**

v.

**UNITED STATES of America, Respondent–Appellee.**

Nos. 97–5040, 97–5041.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 6, 1998.

Decided Jan. 20, 1999.

Michael Dean (argued and briefed), London, Kentucky, for Petitioners–Appellants.

R. Michael Murphy, Asst. U.S. Atty. (argued and brief), London, Kentucky, for Respondent–Appellee.

Before: BATCHELDER and MOORE, Circuit Judges; CARR, District Judge.*

## OPINION

CARR, District Judge.

This is an appeal by the defendant-petitioners, Charles Gilbert (Charles) and Jennings Gilbert (Jennings), from the denial of their joint petition for relief under 28 U.S.C. § 2255.[1] Appellants allege that, in violation of the Posse Comitatus Act, 18 U.S.C. § 1385 (the Act), they were arrested, and items were seized from them, by members of the Kentucky National Guard.

This contention on their part raises three issues: 1) whether the Act was violated, and, if so, whether such violation contravened the Fourth Amendment; 2) whether appellants' failure to have raised their challenge to the arrest, search, and seizure prior to trial can be excused on a showing of cause for and prejudice from such failure; and 3) whether their arrests and resulting convictions constituted a complete miscarriage of justice.

In addition, appellants claim that the government failed to prove that their marijuana cultivation and harvesting had a substantial effect on interstate commerce. Accordingly, they assert, their convictions are unconstitutional.

Because we conclude that the Act was not violated, there is no merit to appellants' miscarriage of justice claim. That conclusion also makes it unnecessary for us to address

---

* The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

1. The appellants were convicted of conspiracy and manufacturing of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. Their convictions were upheld on direct appeal. The issues they raise in their joint § 2255 petition were not raised either prior to, during, or after trial. They attribute such failure, with regard to their first three claims, to the ineffectiveness of their trial counsel. Their fourth claim is based on the Supreme Court's 1995 decision in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

the issue of the cause for or prejudice from appellants' failure to raise their Posse Comitatus claims prior to trial. In addition, we find no merit in appellants' challenge to the constitutionality of their convictions. Accordingly, we affirm the judgment of the district court.

In August, 1990, members of an anti-drug task force conducting aerial surveillance observed marijuana being grown within the boundaries of the Daniel Boone National Forest. A nearby drying area for harvested marijuana plants was also observed in the vicinity. On September 4, 1990, further surveillance disclosed marijuana hanging in the drying area.

As a result of these observations, a team of officers from the United States Forest Service, Kentucky State Police, Kentucky Attorney General's Office, and Kentucky National Guard conducted ground surveillance of the area. The National Guardsmen were armed with sidearms and automatic weapons. On the third day of surveillance, officers saw Jennings remove buds from marijuana plants and place the buds in a bag. Jennings headed toward the drying area. The National Guard officers "assumed a tactical position for purposes of surveillance." (Tr at 84; JA at 237).

Meanwhile, officers surveilling the drying area heard a loud crash on a cliff above them. They then saw two garbage bags thrown down from the cliff to the drying area.

Jennings, followed by Charles and another individual, arrived at the drying area, where Jennings collected dried marijuana and placed it in a plastic garbage bag. Acting on a signal from Detective McKnight of the Kentucky State Police, Officer Berscheit of the Attorney General's Office and National Guard Captain Turner "jumped up behind the rock and started running around to the side yelling police, not to move." (Tr 147–48, JA 299–300). Captain Turner and other Guardsmen arrested appellants; Captain Turner seized pocket knives (later found to contain marijuana residue) from each of them and shotgun shells from Charles. During a search of the vicinity, Captain Turner also found two shotguns and a rifle belonging to appellants. Other Guardsmen participated in a search of Charles' pickup truck and seized several items of evidence from that vehicle. In addition, shortly after his arrest, Charles stated that he would have to admit the marijuana was his because he was caught with it.

The trial evidence included testimony by Guardsmen, identification of the appellants based on their surveillance, marijuana, garbage bags, the pocket knives, copper wire, hunting packs, the seized firearms and ammunition, Charles' statements, and photographs. All this evidence was discovered, seized, or otherwise obtained, in part, by members of the Kentucky National Guard who were at the scene.

The Posse Comitatus Act, on which appellants base their claim that the arrests and ensuing seizure of their belongings and acquisition of Charles' statement were unlawful, provides:

> Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.

18 U.S.C. § 1385.

The purpose of this statute is to prevent use of the federal army to aid civil authorities in the enforcement of civilian laws. Congress adopted the Act's precursor in 1878 in response to abuses resulting from such use in former Confederate States after the Civil War. *See generally United States v. Hartley,* 486 F.Supp. 1348, 1356 (M.D.Fla.1980). The Act reflects a concern, which antedates the Revolution, about the dangers to individual freedom and liberty posed by use of a standing army to keep civil peace. *See* David E. Engdahl, *Soldiers, Riots and Revolution: The Law and History of Military Troops in Civil Disorders,* 57 Iowa L.Rev. 1 (1971).

By its own terms, the Act applies to the Army and Air Force. *United States v. Yunis,* 924 F.2d 1086, 1093 (D.C.Cir.1991) (Act inapplicable to the Navy); *Schowengerdt v. General Dynamics Corp.,* 823 F.2d 1328, 1340 (9th Cir.1987) (same). *See also United*

*States v. Roberts,* 779 F.2d 565, 567 (9th Cir.1986) (Act extended by Executive Order to include the Navy.)

■ The Act does not apply to members of the National Guard unless they have been called into "federal service." Until called into such service, members of the National Guard remain state, rather than federal officers. *Perpich v. Dep't of Defense,* 496 U.S. 334, 345, 110 S.Ct. 2418, 110 L.Ed.2d 312 (1990) ("unless and until ordered to active duty in the Army, [Guardsmen] retained their status as members of a separate State Guard unit"). Thus, "[e]xcept when employed in the service of the United States, officers of the National Guard continue to be officers of the state and not officers of the United States or of the Military Establishment of the United States." *United States v. Dern,* 74 F.2d 485, 487 (D.C.Cir.1934). "Guardsmen do not become part of the Army itself," as pointed out in *United States v. Hutchings,* 127 F.3d 1255, 1258 (10th Cir. 1997), "until such time as they may be ordered into active federal duty by an official acting under a grant of statutory authority from Congress." Only when "that triggering event occurs [does] a Guardsman become[ ] a part of the Army and lose[ ] his status as a state serviceman." *Id. See generally,* Steven B. Rich, *The National Guard, Drug Interdiction and Counterdrug Activities and Posse Comitatus: The Meaning and Implications of "in Federal Service,"* 1994 Army Law. 16.

■ The record in this case shows conclusively that the National Guardsmen who participated in appellants' arrests and ensuing searches and seizures were in state, rather than federal service when they did so. Aside from the complete absence of any proof that the Guardsmen had been called into active service with the Army, see *id.* at 18 (noting limited and specific ways in which Guardsmen may enter active duty), the record contains ample evidence that the Guardsmen were acting in response to directives issued by their Commander–in–Chief, the Governor of Kentucky.

The Governor issued an executive order creating a Marijuana Strike Force. (JA 116). The Strike Force's objective was "total eradication of marijuana in [the] Common-

wealth." (*Id.* 117). Command of the Strike Force was delegated to a ten member committee, one of whose members was an officer with the National Guard's Department of Military Affairs. (*Id.* 116). Although federal officials were also members of the Strike Force and its governing committee, those officials were from civilian agencies, rather than the United States Army. The Guardsmen assigned to the Strike Force were unquestionably under state, rather than federal control.

■ Notwithstanding this proof of the Guardsmen's status, appellants contend that, because the Guardsmen were serving in a full-time capacity and were being compensated with federal, rather than state funds, they were "in federal service" and acting as members of the United States Army. These circumstances are immaterial: "[t]he issue of status depends on command and control and not on whether: state or federal benefits apply; state or federal funds are being used; the authority for the duty lies in state or federal law; or any combination thereof." Rich, *supra,* at 19. "Although National Guard members receive federal pay and allowances ... while performing full-time National Guard Duty," they remain members of the state National Guard and not members on active duty in federal service with the United States Army. *Id.* Consequently, the Act, which applies only to members of the federal armed services, does not apply to the Guardsmen in this case.

Similarly, the fact that the Guardsmen looked and acted like soldiers, rather than law enforcement officers, is immaterial. "These indicia, however persuasive they may be to the eye," the court noted in *Hutchings,* 127 F.3d at 1258, "have never determined the character of a Guardsman's service.... [T]hat question depends solely on whether command of the Guardsman has been taken away from a state's governor by one authorized to do so by Congress." In this case, as in *Hutchings,* command remained with the state.

■ Alternatively, the circumstances under which the Guardsmen were acting in this case were, as permitted by the terms of the Act, authorized by an Act of Congress. Pursuant to 32 U.S.C. § 112(b), full-time Nation-

al Guardsmen may be used for the "purpose of carrying out drug interdiction and counter-drug activities." Use by the Commonwealth of Kentucky of its Guardsmen in accordance with this federal statute provides another basis for exempting those officers from the Posse Comitatus Act.

We conclude, accordingly, that officers of the Kentucky National Guard did not violate the Posse Comitatus Act when they participated in the surveillance of appellants' marijuana cultivation and harvesting, arrested them for those unlawful activities, and searched them and the area in which they had been growing their contraband crop.[2]

Because we find appellants' argument about the applicability and violation of the Act to be without merit, we need not reach the questions of whether they have shown cause for and prejudice from their lawyer's failure to have raised their challenge prior to trial. Likewise, because there was no violation of the Act, their conviction does not constitute a miscarriage of justice.

Appellants' remaining argument is that the statutes under which they were convicted, 21 U.S.C. §§ 841(a), 846, are unconstitutional, and further, that those provisions were applied unconstitutionally because no connection between their marijuana crop and interstate commerce was shown at trial.

█ Appellants' claim of facial unconstitutionality with regard to drug trafficking statutes was rejected by this Court in *United States v. Tucker*, 90 F.3d 1135, 1139–41 (6th Cir.1996). As pointed out in that case, "Drug trafficking is an 'economic enterprise' that substantially affects interstate commerce in numerous ways." *Id.* at 1140. *See also United States v. Bernard*, 47 F.3d 1101, 1102 (11th Cir.1995) (possession and sale of illegal drugs impacts interstate commerce).

█ The statutes were not applied to appellants in an unconstitutional manner.

The Constitution "does not require Congress to predicate regulation of an activity on a case-by-case jurisdictional finding where the activity, like drug trafficking, is of a kind that always implicates interstate commercial concerns." *Tucker*, 90 F.3d at 1140.

In any event, the only evidence of record in the case shows that the land on which appellants were growing their crop was within the boundaries of the Boone National Forest, which is a federal reservation. (Tr 16–20, JA at 174–78). Appellants did not challenge this testimony when it was offered, claim that it was inaccurate, or offer proof that the land they were cultivating was in private possession. A rational trier of fact could, on the basis of the evidence and record, find beyond a reasonable doubt that the land they were using was federal property, so that no showing of a nexus with the Commerce Clause was necessary.

Accordingly, for the reasons stated, we AFFIRM the judgment of the court below.

---

**2.** We need not reach the issue of whether, had we found the Act to have been violated, suppression should have occurred. We note, however, that every federal court to have considered the issue has held that suppression is not an appropriate remedy for a violation of the Act. *United States v. Al–Talib*, 55 F.3d 923, 930 (4th Cir. 1993); *Hayes v. Hawes*, 921 F.2d 100, 103 (7th Cir.1990); *United States v. Hartley*, 796 F.2d 112, 115 (5th Cir.1986). *Accord, United States v. Gri-* ley, 814 F.2d 967, 976 (4th Cir.1987); *United States v. Wolffs*, 594 F.2d 77, 85 (5th Cir.1979); *United States v. Walden*, 490 F.2d 372, 376–77 (4th Cir.1974). See also Note, The Posse Comitatus Act as an Exclusionary Rule: Is the Criminal to go Free Because the Soldier Has Blundered?, 61 N.D. L.Rev. 107, 129 (1985) ("There is no evidence Congress intended the Posse Comitatus Act to double as an exclusionary rule").