NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0402n.06
Filed: June 18, 2007

No. 05-4321

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| STEPHEN A. LENGEN, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MARTIN and DAUGHTREY, Circuit Judges, and SCHWARZER,[*] District Judge.

PER CURIAM. The defendant, Steven Lengen, appeals his convictions, obtained pursuant to a three-count indictment, for possession with intent to distribute more than 500 grams of methamphetamine, possession with intent to distribute between 100 and 200 grams of cocaine, and possession of two firearms in furtherance of drug-trafficking offenses. Before this court, he raises multiple issues for review, the most significant of which relate to the denial of his motion to suppress certain evidence seized from his vehicle after he was stopped for a traffic violation and other evidence seized from his residence pursuant to a search warrant. We find no reversible error in connection with

_____

[*]The Hon. William W Schwarzer, United States District Judge for the Northern District of California, sitting by designation.

those issues, nor with the others that Lengen raises on appeal.  We therefore affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

The record in this case establishes that the Cleveland police were investigating Rochelle Langford, who had two outstanding felony warrants issued against her, and defendant Lengen, whom they suspected of dealing in drugs.  They had information that Langford was Lengen's girlfriend and often visited Lengen at his home at 4240 Plymouth Avenue in Cleveland.  While conducting surveillance of that residence, officers observed Langford leave the dwelling and drive away with the defendant, who was at the wheel of a dark blue Mercury Marquis.

Police followed the vehicle and effected a traffic stop when the defendant failed to obey a stop sign not far from his home.  Approaching the vehicle, officers asked Langford to step from the car and, when she did, "[they] could see in between on the floor a plastic bag of marijuana."  Consequently, the officers also asked the defendant to exit the vehicle and then subjected him to a pat-down search.  Although no drugs or weapons were discovered on the defendant's person, the police did locate "a [loaded] gun in the vehicle underneath the driver's seat."  A more thorough search of Langford additionally revealed that she had with her marijuana, a scale, and a quantity of cocaine in a baggie decorated with the logo of the Nike sportswear company.  When Lengen was later informed about the

baggie with the Nike symbol in his girlfriend's possession, he blurted out, "The bitch stole it from me!"

Armed with that information, and with the knowledge that a confidential informant had told police both that Lengen always hid a loaded firearm underneath the driver's seat of his car and that he had a large amount of cocaine in his home on Plymouth Avenue within the prior month, Detective John Graves secured a warrant to search Lengen's home. Simultaneously, the Cleveland police notified federal drug officials of the warrant's issuance, and both city police and a federal agent participated in its execution at 4240 Plymouth Avenue, searching specifically for evidence of drug-trafficking. During the search, law enforcement officers recovered documents indicating that the home belonged to the defendant, as well as five firearms, methamphetamine, cocaine, marijuana, baggies with Nike logo imprinted on them, and scales used to weigh drugs for packaging and resale. More specifically, the officers recovered $25,000 in cash and 519 grams of methamphetamine from a safe in a bedroom closet in the house, a loaded nine-millimeter handgun from the headboard of the bed situated approximately four feet from the safe, and cocaine, marijuana, and a loaded .32 caliber revolver from a desk and cabinet in the home's office.

While the police were engaged in the search, Lengen remained handcuffed and seated at the kitchen table. Eventually, the defendant requested that he be allowed to sit in a specific chair in the living room. Before placing Lengen in that chair, however, officers

examined the vicinity of the piece of furniture and discovered a loaded, "smaller caliber revolver" on the floor by the chair.

As a result of the evidence seized from the defendant's residence, the grand jury returned an indictment charging Lengen with one count of possession with intent to distribute more than 500 grams of methamphetamine, one count of possession with intent to distribute approximately 200 grams of cocaine, and one count of possessing "a Harrington & Richardson Arms, .32 caliber revolver, Model 0432, serial number 83709, and a Ruger, 9 millimeter pistol, Model P85, serial number 300-68509," in furtherance of drug-trafficking crimes. Prior to trial, the defendant moved to suppress the physical evidence against him, arguing that constitutional defects in the initial traffic stop, his arrest, and the search warrant obtained for his residence mandated that the evidence recovered not be introduced at trial. The district judge disagreed, however, and denied the suppression motion. Additionally, she concluded that Lengen had provided no justification for disclosure of the identity of the confidential informant at trial and, also, ruled that the defendant had offered no evidence to support his allegation that the affiant officer included false statements in his affidavit for the search warrant.

At the ensuing trial, the evidence detailed above was presented to the jury. Moreover, other prosecution witnesses testified that, in addition to the 519 grams of methamphetamine, 196 grams of cocaine were recovered from the defendant's house, and that the methamphetamine was 49 percent pure and the cocaine 92 percent pure.

Furthermore, a former girlfriend of Lengen testified that the defendant had provided her with both cocaine and methamphetamine and that the drugs were packaged in baggies containing the Nike logo. Finally, another friend of the defendant, Paul Buccino, corroborated the ex-girlfriend's testimony concerning Lengen's use of special baggies to package drugs and further testified that he visited the defendant's house "[a]lmost on a daily basis," that he bought both methamphetamine and cocaine regularly from the defendant, and that the defendant always transacted business with the witness inside the office at 4240 Plymouth Avenue.

Rochelle Langford was the only witness called by the defense at trial. She denied that she had ever seen the defendant selling drugs and testified that the cocaine with which she was found when arrested was not obtained from Lengen but, rather, from a street dealer known to her only as Chico.

The jurors credited the testimony of the prosecution witnesses and returned verdicts finding Lengen guilty on all three counts of the superseding indictment. The district judge entered judgment in accordance with those verdicts and sentenced Lengen to concurrent 151-month sentences on the two drug trafficking convictions and a consecutive 60-month sentence on the firearms charge. The court also ordered the defendant to serve five years on supervised release after completion of those sentences and to pay a special assessment of $300. From that judgment, Lengen now appeals.

**DISCUSSION**

**A.  Suppression Issues**

The defendant first alleges numerous errors in the district court's handling of his requests for suppression of evidence, for a hearing on alleged misstatements by the police officer who submitted the affidavit in support of the request for the search warrant, and for disclosure of the identity of the confidential informant.  In addressing these issues, our review is circumscribed by the well-established principles that we review legal conclusions *de novo* and findings of fact for clear error.  *See, e.g.*, *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (*en banc*).

1.  Search of the Vehicle and Residence

Lengen first launches an attack on the legality of the initial stop of his vehicle and the resulting search of that car.  He contends that because the officers who testified at the suppression hearing were not the ones who actually made the stop, those witnesses could not claim concern for officers' safety as justification for removing the defendant and his passenger from the car.  He also contends that possession of an *unconcealed* weapon is not a crime in Ohio, arguing that discovery of a weapon that was visible near the front seat thus could not justify further investigatory actions.  We find these arguments to be without merit.

It is now well-established, that "so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (*en banc*); *see also Whren v. United States*, 517 U.S. 806, 819 (1996). In this case, the parties do not dispute that the police legitimately stopped Lengen for failing to stop at a marked traffic sign. Indeed, one of the officers involved in the stop recalled that the defendant later pleaded "no contest" to that citation and was assessed a $60 fine.

Consequently, the initial stop of Lengen's vehicle satisfies constitutional mandates that arresting officers have probable cause to charge an individual with a traffic offense. Once the stop had been effected, moreover, the officers were entitled to arrest Rochelle Langford on outstanding felony warrants. Additionally, observing the plainly visible bag of marijuana in the front seat area, those same officers were then presented with sufficient cause to arrest Lengen, the driver of the vehicle, for possession as well.

After Lengen was arrested, the officers were entitled to search the defendant's vehicle pursuant to the search-incident-to-arrest exception to the warrant requirement of the Fourth Amendment, which had its genesis in *Chimel v. California*, 395 U.S. 752, 763 (1969) (police may conduct a limited, warrantless, post-arrest "search of the arrestee's person and the area 'within his immediate control' – construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence"). Despite the apparently limited nature of the *Chimel* exception to the warrant requirement,

moreover, the Supreme Court has now expanded that concept to allow a search incident to arrest when the arrestee was not only handcuffed but also placed in the back seat of a patrol car before the police began a search of a vehicle from which the arrestee had recently exited. *See Thornton v. United States*, 541 U.S. 615 (2004). In *Thornton*, the warrantless search was deemed permissible even though the risk that the arrestee "would nevertheless 'grab a weapon or evidentiary ite[m]' from his car was remote in the extreme." *Id.* at 625 (Scalia, J., concurring). Given this expansion of the original principles underlying the search-incident-to-arrest exception, there can be no doubt that the search of Lengen's car immediately after his removal from it was justified under present Fourth Amendment jurisprudence.

The defendant insists that even if his initial detention is considered valid, his arrest was nevertheless improper because he could not be tied to any illegality other than the minor traffic violation. Specifically, he contends that any drugs in the vehicle were not his and that Langford actually admitted ownership of all the drugs and drug paraphernalia discovered at the time of the stop. Furthermore, he argues that there was nothing overtly illegal about the presence of the firearm on the floorboard, because only the act of *concealing* a weapon without a license to do so is illegal in Ohio. *See* O.R.C. § 2923.12. However, although Lengen submits that the gun was not concealed, the officer who participated in the vehicle search later testified that the loaded weapon was indeed found "underneath the driver's seat." In any event, whether the firearm was concealed or not, its presence in the car was illegal under O.R.C. § 2923.16(C), which provides that:

>    No person shall knowingly transport or have a firearm in a motor vehicle, *unless it is unloaded* and is carried in one of the following ways:
>
>    (1) In a closed package, box, or case;
>
>    (2) In a compartment that can be reached only by leaving the vehicle;
>
>    (3) In plain sight and secured in a rack or holder made for the purpose;
>
>    (4) In plain sight with the action open or the weapon stripped, or, if the firearm is of a type on which the action will not stay open or which cannot easily be stripped, in plain sight.

(Emphasis added.)  Clearly, Lengen failed to comply with all of these requirements.  The stop and arrest of the defendant was thus constitutionally permissible under the circumstances presented in this case.

## *2.* **Reliability of Confidential Informant**

After arresting Lengen, the police then sought a search warrant for the defendant's home, based in large measure upon information provided to the affiant, Detective John Graves, from a confidential informant.  Lengen now maintains that the informant was neither reliable nor trustworthy and that the issuance of the warrant thus was not justified because the affidavit failed to establish a connection between the alleged criminal activity and the residence to be searched.  To the contrary, however, the record reflects that information provided to Graves by the confidential informant was verified by the police upon making the traffic stop of Lengen and Langford.  At the suppression hearing, Graves testified that the informant indicated that the defendant was selling cocaine from his residence at 4240 Plymouth Avenue and that, when Lengen drove his own vehicle, "he

carried a handgun in the vehicle and kept it under his driver's seat at all times." Furthermore, Graves stated that the confidential informant had been in Lengen's residence within the month prior to seeking the warrant and that the informant "had observed a large amount of cocaine inside the premise [sic]." Finally, Graves estimated that he and other members of the Cleveland Police Department had used the confidential informant "probably maybe a hundred times or more" and that the informant had proved to be reliable "through other independent investigations with numerous controlled buys for the Cleveland Police Department which has resulted in numerous arrests and convictions for the violations of the states [sic] drug laws."

In addition to the informant's past reliability, the Cleveland police were able to verify some of the information that the informant supplied prior to the application for the search warrant. For example, the arresting officers discovered that Lengen hid a firearm under the seat of his car, just as the confidential informant had indicated. Also, when arrested shortly after leaving the defendant's residence at 4240 Plymouth Avenue, Rochelle Langford was in possession of marijuana and cocaine, the latter a scheduled drug that the informant had recently observed in large quantities in Lengen's home.

It is, of course, well-established that a search warrant may issue upon a showing of probable cause, a standard not requiring absolute certainty. To guide magistrates in determining whether such a threshold showing has been achieved, the United States Supreme Court explained in *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983), that:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [her], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

The totality of the circumstances present in this case clearly supports the conclusion of the issuing judge that probable cause existed to believe that evidence of drug-trafficking could be found in Lengen's residence: Rochelle Langford was arrested shortly after leaving the defendant's home and was found to be in possession of both cocaine and marijuana; the confidential informant indicated that he had been in that home within the past month and had seen a large amount of cocaine stored there; he offered the later-verified information that the defendant traveled with a firearm under the driver's seat of his car; and the confidential informant who provided information to the police was shown to have provided accurate information in numerous other instances. We conclude that the reliable information about the defendant offered by the informant, in conjunction with the observations of the police and the evidence seized as a result of a legal traffic stop, provided the probable cause necessary to support the issuance of the warrant to search the defendant's home at 4240 Plymouth Avenue.

## 3. **Particularity of Warrant**

Lengen next argues that the warrant itself was not sufficiently particular to provide standards to the police regarding the scope of the authorized search. Without question,

"'[a] general order to explore and rummage through a person's belonging is not permitted,' rather '[t]he warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized.'" *United States v. Gardiner*, 463 F.3d 445, 471 (6th Cir. 2006) (citations omitted). Furthermore, "[t]he degree of specificity required depends on the crime involved and the types of items sought." *Id.* (quoting *United States v. Blakeney*, 942 F.2d 1001, 1026 (6th Cir. 1991)).

In this case, the warrant satisfied those particularity requirements. Not only did it describe the real property to be searched, but the authorization also sufficiently detailed the items that the police could seize. Because of the very nature of contraband drugs and any drug-trafficking operation, a warrant cannot be expected to identify exactly the weights or quantities of controlled substances and paraphernalia that might be found in a private dwelling. In this case, however, the warrant adequately directed the actions of the searchers by authorizing seizure from the particularly-described dwelling of the following items evidencing participation in criminal activity:

> Cocaine and other narcotic drugs and/or controlled substances, instruments, and paraphernalia used in the taking of drugs and/or preparation of illegal drugs for sale, use, possession, or shipment, records of illegal transactions, articles of personal property, papers and documents tending to establish the identity of persons in control of the premises, any and all evidence of communications used in the furtherance of drug trafficking activity, including, but not limited to, pagers, cellular telephones, answering machines, and answering machine tapes, any and all other contraband, including, but not limited to, money, firearms, and other weapons being illegally possessed therein, and any and all evidence pertaining to the violation of the drug laws of the State of Ohio, to wit: Ohio Revised Code Chapters 2923 and 2925.

This challenge is also without merit.

### *4.* <u>Scope of Authority to Search</u>

Lengen next argues that the warrant issued in this case authorized only the search of the defendant's dwelling, not of the safe discovered in Lengen's bedroom closet. The principle of search and seizure jurisprudence is now settled, however, that "[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found." *United States v. Ross*, 456 U.S. 798, 820 (1982). Thus, although a warrant to search for a stolen vehicle would not justify opening a small wall safe in a bedroom closet, judicial authorization to search a home for contraband drugs, money associated with drug trafficking, and drug paraphernalia would clearly justify the opening of doors, closets, drawers, safes, and other places where the listed items could be hidden. Consequently, the police in this case were not required to obtain a separate warrant to look in the safe found in the closet of the defendant's bedroom.

### *5.* <u>Identity of Confidential Informant</u>

The defendant challenges the district court's denial of his motion to reveal the identity of the confidential informant. We find no error in the court's ruling. The "Supreme Court has recognized that the government has a privilege not to disclose the identity of persons who furnish information regarding violations of law." *United States v. Whitley*, 734 F.2d 1129, 1137 (6th Cir. 1984), *rev'd on other grounds in United States v. Robinson*, 887

F.2d 651 (6th Cir. 1989). Indeed, because "[t]he privilege of the Government to withhold the identity of informers is especially important in the enforcement of narcotic laws," we have "required disclosure of an informant's identity [only] when the informer was an eyewitness to, and in fact a participant in, the exchange of contraband by the defendant seller." *Whitley*, 734 F.2d at 1138 (citations omitted). By contrast, disclosure of the identity of the confidential informant in this matter would not be essential to a fair determination of Lengen's guilt because no actual drug transaction occurred between the defendant and the confidential informant. Rather, the informant merely alerted the police to the defendant's existence and provided certain information, much of which the police were able to verify themselves at a later time. Consequently, the district court did not abuse its discretion in denying the defendant's request for disclosure of the informant's identity.

## 6. Need for **Franks** *Hearing*

Similarly, the court did not abuse its discretion in denying a hearing on the defendant's allegations of intentional misstatements in the affidavit submitted by Detective Graves, the officer who obtained the search warrant for Lengen's home. In *Franks v. Delaware*, 438 U.S. 154, 171 (1978), the Supreme Court emphasized the long-standing "presumption of validity with respect to the affidavit supporting [a] search warrant." The Court then explained, however, that a criminal defendant could challenge the legitimacy of a search under certain circumstances by attacking the truthfulness of the allegations made in the affidavit supporting the warrant application. As we have noted:

> [A] court considering whether to suppress evidence based on an allegation that the underlying affidavit contained false statements must apply a two-part test: (1) whether the defendant has proven by a preponderance of the evidence that the affidavit contains deliberately or recklessly false statements and (2) whether the affidavit, without the false statements, provides the requisite probable cause to sustain the warrant.

*United States v. Charles*, 138 F.3d 257, 263 (6th Cir. 1998).

In this case, the defendant has failed to make the required "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks*, 438 U.S. at 155-56. In an attempt to satisfy that burden, Lengen simply alleged that Detective Graves's affidavit relied upon observations from a confidential informant who had observed a large amount of cocaine in the residence at 4240 Plymouth Avenue and that Ronnie Edmonds later provided defense counsel with a letter stating that Edmonds was not the confidential informant in this case. Other than that simple statement, which was included in an offer by Edmonds to provide favorable testimony in exchange for release from confinement or for a monetary reward, nothing in the record supports the assertion that Edmonds was or was not the informant whose observations helped form the probable cause supporting the issuance of the search warrant. The defendant has thus failed to justify the need for a *Franks* hearing in this matter.

**B. Issues Related to the Sufficiency of the Evidence**

When addressing a challenge to the sufficiency of the evidence, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In doing so, however, we do not reweigh the evidence or re-evaluate the credibility of witnesses. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993)

The defendant challenges the sufficiency of the evidence to support his convictions on the firearms charges. He claims that he was not in actual possession of the two guns and was in the location where the weapons were found only because the police returned him to his residence in handcuffs. From this proof, he apparently claims that no nexus was established between the guns and the drugs. There simply is no merit to this argument.

Without question, "[b]y requiring that the possession [of the firearm] be 'in furtherance of' the crime, Congress intended a specific nexus between the gun and the crime charged." *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001). Contrary to the defendant's belief, however, that nexus does not require *actual* possession of the firearm while holding the prohibited controlled substances. Although mere "possession of a firearm on the same premises as a drug transaction would not, without a showing of a connection between the two, sustain a . . . conviction [under 18 U.S.C. § 924(c)]," a firearm "strategically located so that it is quickly and easily available for use" would support such a conviction. *Id.*

The two loaded, operable firearms specified in the superseding indictment were indeed "strategically located" for quick and easy use to protect the illegal drugs and the proceeds from the sale of the contraband. One of the weapons was found in the headboard of defendant's bed, only three or four feet from the wall safe in which police found $25,000 in cash and a substantial amount of methamphetamine. The second gun, moreover, was found in a drawer in the defendant's office, either together with or very close to a supply of cocaine and other scheduled drugs. Viewing this evidence in the light most favorable to the prosecution, a reasonable jury could easily find, beyond a reasonable doubt, that Lengen possessed the two listed firearms in furtherance of a drug trafficking crime. The defendant's challenge to the district court's denial of his motion for judgment of acquittal on Count 3 of the superseding indictment is thus without merit.

Nor do we find any merit to the defendant's contention that his convictions on the firearms charges must be vacated because the government failed to establish that the two guns "had been transported in interstate commerce" or were possessed "in and affecting interstate commerce," and because the applicable statute fails to require such a showing. We have held "that 18 U.S.C. § 924(c) falls squarely within Congress'[s] Commerce Power." *United States v. Ricketts*, 317 F.3d 540, 543 (6th Cir. 2003). In doing so, we recognized that a § 924(c) offense and the underlying drug crime are not "free-standing" acts. *See id.* Rather, the firearms offense is intimately tied to the underlying drug offense, "which unquestioningly substantially affects interstate commerce." *Id.*; *see also Gilbert v. United States*, 165 F.3d 470, 474 (6th Cir. 1999) ("The Constitution 'does not require

Congress to predicate regulation of an activity on a case-by-case jurisdictional finding where the activity, like drug trafficking, is of a kind that always implicates interstate commercial concerns.'" (citation omitted)).

## C.  Trial Issues

Finally, we have reviewed the defendant's numerous allegations of trial error on the part of the district court, including, among others, claims that the court permitted improper cross-examination of Rochelle Langford; violated Federal Rule of Evidence 404(b) in allowing the introduction of inadmissible evidence; and erred in charging the jury with respect to various instructions, including those on reasonable doubt, specific intent, unanimity, constructive possession, "other crimes," and lesser included offenses.  We find no error in regard to any of these issues or in regard to the defendant's claim of prejudice from accumulated error.

## CONCLUSION

For the reasons set out above, we find no reversible error in connection with the defendant's convictions and, therefore, we AFFIRM the judgment of the district court.