NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0107n.06

Case No. 20-5683

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 26, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE |
| v. | ) ) | UNITED STATES DISTRICT COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| CARLOS LANDEROS-SALCEDO, | ) | |
| Defendant-Appellant. | ) | O P I N I O N |
| | ) | |

**BEFORE: CLAY, McKEAGUE, and MURPHY, Circuit Judges.**

**McKEAGUE, Circuit Judge.** A jury convicted Carlos Landeros-Salcedo for possession of a firearm by an illegal alien, cocaine possession with intent to distribute, and possession of a firearm in furtherance of a drug-trafficking crime. On appeal, Landeros-Salcedo challenges the district court's denial of his motion for partial acquittal on the last count. Applying the analytic framework from *United States v. Mackey*, 265 F.3d 457 (6th Cir. 2001), we hold that a reasonable jury could find a specific nexus between Landeros-Salcedo's firearm and drug trafficking. We affirm.

**I**

Detectives from the Organized Crime Unit of the Memphis Police Department went to Landeros-Salcedo's house to investigate a complaint.[1] Eventually, Landeros-Salcedo and his

---

[1] The content of the complaint was not admitted into evidence.

father gave consent for the police to conduct a search. Landeros-Salcedo told the police that they would find "a gun and some drugs" in his room.

The police found both. First, the police found a loaded pistol on the bed. Second, the police found 21 bags of cocaine, with a net weight of 4.94 grams, in a dresser drawer. The dresser, which had ammunition for the firearm in a different drawer, was a few feet from the bed. The police also found a digital scale and a shoe box containing empty bags (similar to those that contained the cocaine) on a nearby table.

Landeros-Salcedo admitted to the police that he sold cocaine. He stated that he bought the cocaine the police found for $320, had sold half of it, and had made about $300. He also stated that he had been selling cocaine for about six months, purchasing new cocaine to sell every few weeks.[2] The police found no evidence that drug sales had been conducted in the home. Upon further investigation, the police learned that Landeros-Salcedo was not in the country legally.

A grand jury indicted Landeros-Salcedo on three counts: possession of a firearm by an illegal alien, under 18 U.S.C. § 922(g)(5); cocaine possession with intent to distribute, under 21 U.S.C. § 841(a)(1); and possession of a firearm in furtherance of a drug-trafficking crime, under 18 U.S.C. § 924(c)(1)(A)(i).

At trial, the government's expert witness testified about the use of firearms in drug trafficking. Drug traffickers usually carry firearms for protection, the expert testified. Drug traffickers typically need this protection in part because they cannot resort to calling the police if robbed. But when a drug trafficker does business from their home, the jury heard, firearms are typically kept in the house somewhere easily accessible.

---

[2] The interviewing officer testified that he forgot to ask questions about the firearm.

The jury found Landeros-Salcedo guilty on each count. Landeros-Salcedo moved for a partial judgment of acquittal on the third count. Fed. R. Crim. P. 29. He argued that the evidence here did not meet the specific nexus requirement of § 924(c) between the firearm and his drug-trafficking offense. The district court denied the motion, holding that a rational trier of fact could conclude that Landeros-Salcedo used the firearm to protect the drugs and the sales' proceeds. Landeros-Salcedo appeals.

**II**

On appeal, Landeros-Salcedo contends that the district court should've granted his motion for partial acquittal. The question is whether there were sufficient facts for the jury to tie the firearm to the drug trafficking. Landeros-Salcedo's argument rests on the facts that there was no evidence of drug trafficking in the house, that the police found no proceeds in his room, and that the amount of drugs the police found was small. But a holistic review of the relevant factors demonstrates that a reasonable trier of fact could nonetheless find that Landeros-Salcedo possessed the firearm to facilitate his drug trafficking.

**A. Standard of Review**

We review the denial of a Rule 29 motion de novo, asking whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Potter*, 927 F.3d 446, 453 (6th Cir. 2019) (quoting *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006)), *cert. denied*, 140 S. Ct. 436 (2019). In answering this legal question, we do not reweigh the evidence, *see Musacchio v. United States*, 136 S. Ct. 709, 715 (2016), and we "view[] the evidence in the light most favorable to the prosecution," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A sufficiency-of-the-evidence challenge is accordingly a "very heavy burden"

for a defendant to carry. *United States v. Blough*, 832 F. App'x 961, 963 (6th Cir. 2020) (quoting *United States v. Robinson*, 813 F.3d 251, 255 (6th Cir. 2016)).

## B. Sufficiency of the Evidence

18 U.S.C. § 924(c)(1)(A) criminalizes possession of a firearm "in furtherance of" a drug-trafficking crime. "By requiring that the possession be 'in furtherance of' the crime, Congress intended a specific nexus between the gun and the crime charged." *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001). If the government proves a defendant "owns a gun 'to protect the drugs, the proceeds of drug sales, or the dealer [them]self,' that possession-for-protection purpose will facilitate the crime." *United States v. Maya*, 966 F.3d 493, 500 (6th Cir. 2020) (quoting *United States v. Bailey*, 882 F.3d 716, 721 (7th Cir. 2018)).

We use a non-exclusive six-factor test to assess whether a jury's finding of a nexus was reasonable. The factors are "whether the gun was 'strategically located so that it [was] quickly and easily available for use,' whether it 'was loaded,' 'the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found.'" *Maya*, 966 F.3d at 501 (alteration in original) (quoting *Mackey*, 265 F.3d at 462). But we've recently cautioned against a strict adherence to the factors as discrete considerations, favoring instead a "holistic analysis." *Id.* (quoting *United States v. Brown*, 724 F.3d 801, 803 (7th Cir. 2013)). The central aim of the test is to differentiate between firearm possession to facilitate a drug-trafficking crime, or a crime of violence, and other possession. *See Mackey*, 265 F.3d at 462.

We agree with the district court that the facts here permit a rational trier of fact to conclude that Landeros-Salcedo's possession of the gun was to further a drug-trafficking crime. The police found the loaded pistol[3] on the bed in Landeros-Salcedo's room, a few feet from the dresser that had the cocaine and the ammunition and a few more feet from the table that had the scale and the empty bags. *See Blough*, 832 F. App'x at 964 (affirming conviction when pistol and cocaine were stored in the same dresser); *United States v. Serrano-Ramirez*, 811 F. App'x 327, 340 (6th Cir. 2020) ("[A] rational juror could conclude that Serrano-Ramirez strategically kept [the firearm] in his bedroom, where it was easily accessible and near his stash of cocaine."), *cert. denied*, 141 S. Ct. 399 (2020). And Landeros-Salcedo illegally possessed the gun because of his immigration status. Thus the location of the gun, the fact that it was loaded, and the illegal possession supported the jury's conclusion.

Likewise, the evidence indicated substantial drug activity. Landeros-Salcedo's admission, coupled with indicia like the scale and the bags, permitted the conclusion that Landeros-Salcedo's trafficking was not minimal. *See United States v. Guadarrama*, 591 F. App'x 347, 353 (6th Cir. 2014). Landeros-Salcedo admitted that he had been trafficking drugs for about six months; his operation was ongoing. *See Maya*, 966 F.3d at 502 (noting the relevance of evidence of an "ongoing" operation). This evidence in conjunction with the expert testimony that drug traffickers often use firearms rather than the police to protect themselves, their money, and their drugs allowed the jury rationally to connect the drugs to the gun. *See id.* at 502 (noting that similar testimony supported the verdict); *United States v. Ham*, 628 F.3d 801, 809 (6th Cir. 2011) (same).

---

[3] We have previously noted the import of evidence that handguns are more often used to protect drug transactions than, for example, rifles. *See, e.g.*, *United States v. McKinney*, 818 F. App'x 412, 417 (6th Cir. 2020) (noting that handguns "are more likely to be used by drug dealers than other types of guns"); *United States v. Guadarrama*, 591 F. App'x 347, 352 (6th Cir. 2014). But the prosecution's expert did not testify to that fact here.

The final factor, the time and circumstances of the search, also demonstrated a connection between the drugs and the firearm. The jury heard that the Organized Crime Unit—a unit that investigates drug crimes, among others—arrived at the house to investigate a complaint. After learning the nature of the complaint, Landeros-Salcedo told the police they would find "a gun and some drugs" when they conducted the search. And the search yielded both. *See United States v. Clay*, 630 F. App'x 377, 389 (6th Cir. 2015) ("[L]aw enforcement found the gun during the same search in which they found the cocaine, a consideration that also weighs in favor of conviction."); *United States v. Brown*, 732 F.3d 569, 577 (6th Cir. 2013) (same).

Viewing the evidence as a whole and in the light most favorable to the prosecution, a rational jury could find that there was a nexus between the drugs and the firearm.

Landeros-Salcedo disputes this conclusion on three grounds: that the prosecution proffered no evidence of drug trafficking in the house, that the police found no cash proceeds of drug sales in the room, and that the amount of drugs the police found was small. But none of these grounds are sufficient to overturn the verdict.

The police did not find evidence of drug sales from the home. But the district court concluded that the jury could've permissibly found that the gun was located to protect the drugs found and the admittedly earned proceeds, not for use during transactions. *See Maya*, 966 F.3d at 502–03 (holding that protection of drug proceeds is a viable theory and collecting cases); *United States v. Lengen*, 245 F. App'x 426, 436 (6th Cir. 2007) (per curiam) (holding that protection of drugs is a viable theory). Just as "[a] defendant doesn't have to be observed holding a firearm while committing a drug crime in order to be convicted under § 924(c)," *United States v. McKinney*, 818 F. App'x 412, 416 (6th Cir. 2020) (emphasis omitted), a firearm does not need to be found at the site where drugs exchanged hands.

And the fact that a search yields drugs rather than cash does not defeat a finding that a defendant possessed a gun in furtherance of a drug-trafficking crime. If possession of cash proceeds was legally more incriminating than possession of illegal drugs (or if both were necessary), then a defendant's guilt would oscillate based on whether the defendant had recently replenished their stock.

Nonetheless, here the police found more than the cocaine. Within a few feet of the gun, the police found a scale, empty bags similar to those in which the cocaine was stored, and ammunition. *See Clay*, 630 F. App'x at 389 (noting that drug-sale paraphernalia located close to the gun and drugs weighs in favor of a conviction). And while the police did not find the proceeds, Landeros-Salcedo admitted that he had made about $300 by selling half of his recent resupply. Considering these facts along with Landeros-Salcedo's admission that he resupplied every few weeks, a rational juror did not need to see proof of sales in the home or recovered cash proceeds to conclude that the gun was related to a drug-trafficking crime.

Nor does the last ground—that the police recovered only a small amount of cocaine—mandate reversal. Landeros-Salcedo argues that there is no nexus here because the police recovered only 4.94 grams of cocaine and under the "fortress theory" that would be insufficient. But that misconstrues the fortress theory.

Like the *Mackey* factors, the fortress theory is a holistic multifactor test that provides that, "under certain circumstances, guns in close proximity to drugs" demonstrate a nexus between the two. *United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014); *see United States v. Simmons*, 630 F. App'x 365, 371 (6th Cir. 2015). The idea is that the "presence of the firearm has the potential of facilitating" the drug trafficking via protection. *Simmons*, 630 F. App'x at 371 (quoting U.S.S.G. § 2K2.1 cmt. n.14(B)(ii)). But instead of determining whether a firearm was

possessed "in furtherance of" a drug-trafficking crime, the fortress theory is used to determine whether a sentencing enhancement applies: whether a defendant "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). To that end, courts assess factors like

> the proximity of the firearm or ammunition to drugs or drug paraphernalia, . . . the possession of large amounts of cash in close proximity to the drugs, . . . the amount of drugs in defendant's possession, . . . the type of firearm and whether it was loaded, . . . and whether the defendant's possession of the firearm was legitimate or illegal.

*Simmons*, 630 F. App'x at 371 (citations omitted); *see also United States v. Jackson*, 877 F.3d 231, 240 (6th Cir. 2017).

Because of the overlap between *Mackey* and the fortress theory, we have at times used the precedents interchangeably. *See, e.g.*, *United States v. Steele*, 919 F.3d 965, 970 (6th Cir. 2019). The amount of drugs or cash found thus fit naturally into the "type of drug activity" *Mackey* factor. *Cf. United States v. Leary*, 422 F. App'x 502, 511 (6th Cir. 2011). The relevant difference is that the fortress theory cases more often emphasize the amount of drugs and money found, a difference on which Landeros-Salcedo focuses.

Fortress theory cases exist on a spectrum. In the obvious cases, "[p]roximity between a firearm and drugs will suffice to justify the enhancement when an offender is engaged in drug trafficking." *United States v. Massey*, 758 F. App'x 455, 464 (6th Cir. 2018) (per curiam) (quoting *United States v. Shields*, 664 F.3d 1040, 1045 (6th Cir. 2011)); *see also Seymour*, 739 F.3d at 930 (collecting cases). But when cases are less clear cut, we often look to whether the amounts of cash or drugs were great to determine if there's a nexus between drugs and a firearm under the simple logic that a greater value of contraband merits greater protection. *See United States v. Shanklin*, 924 F.3d 905, 921 (6th Cir. 2019) (collecting cases). The fortress theory may conversely be stretched past its limit when one attempts to show a nexus between a firearm and possession of a

small amount of drugs for personal use. *See Seymour*, 739 F.3d at 930–31; *see also Shields*, 664 F.3d at 1046 ("[I]t is easier to see how a firearm facilitates drug trafficking transactions[] than it is to see how a firearm facilitates the mere possession of controlled substances."). Thus, all else being equal, the more drugs and cash found, the more likely a nexus.

But here, the small amount of drugs found tips neither the "type of drug activity" factor nor the overall analysis. The cash and drugs found here were much less than in many of our precedents. *See, e.g.*, *Maya*, 966 F.3d at 502 ("$20,000 in cash"); *Lengen*, 245 F. App'x at 429 ("$25,000 in cash and 519 grams of methamphetamine"). But Landeros-Salcedo admitted to drug trafficking for months and the police found evidence of drug sales only a few feet away from the firearm and ammunition, including a scale and empty bags. Such evidence also falls under the "type of drug activity" factor, so a large amount of drugs is unnecessary to buttress that factor. *See Guadarrama*, 591 F. App'x at 353 (noting that admission to trafficking and possession of drug-sale paraphernalia are relevant to the "type of drug activity" factor); *see also Clay*, 630 F. App'x at 389.

Most importantly, Landeros-Salcedo's argument that he possessed only a "de minimis" amount of cocaine, having sold half of his recent purchase and resupplying every few weeks, cannot overcome the balance of the *Mackey* analysis. There is no magic amount of drug trafficking under which it is irrational for a juror to conclude that a firearm facilitated the crime. Were we to hold otherwise, we would carve a "small-time dealer" exception into § 924(c) without any textual support.

In sum, the facts on which Landeros-Salcedo relies—that there were not drug sales in the house, that the police found no cash, and that the amount of drugs recovered was small—do not show that the jury's finding was irrational. Assessing the jury's verdict holistically without undue

weight on any one fact, the jury permissibly determined that Landeros-Salcedo possessed the firearm in furtherance of a drug-trafficking crime.

## III

We affirm the district court's judgment.