NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0303n.06

No. 11-5533

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Mar 19, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| RONNIE WELLINGTON | ) | O P I N I O N |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE:    GUY, COLE, and ROGERS, Circuit Judges.

COLE, Circuit Judge.  Ronnie Wellington pled guilty to being a felon in possession of a

firearm, in violation of 18 U.S.C. § 922(g)(1), and was sentenced to 110 months in prison.  On

appeal, Wellington challenges the application of U.S.S.G § 2K2.1(b)(6) to his sentence, which

provides for a four-level enhancement where the weapon is possessed "in connection with another

felony offense."  For the reasons set out below, we AFFIRM Wellington's sentence.

I.  BACKGROUND

On September 21, 2009, Metropolitan Nashville Police Officers pulled over a black 1998

Mercury Mountaineer traveling at 45 miles per hour in a 30-mile-per-hour zone.  Wellington was

the driver and lone occupant of the vehicle, and did not have a valid driver's license.  After receiving

permission to search the vehicle, officers discovered a loaded and cocked 10mm Wyoming Arms

automatic pistol on the driver's seat floorboard.  Wellington fled the scene when the weapon was

discovered, but was apprehended after a foot chase. An inventory search of Wellington's vehicle after his apprehension revealed a plastic bag containing 49 tablets of Dihydrocodeinone, a prescription pain-killer, under the driver's seat.

Wellington was indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On January 5, 2011, Wellington pleaded guilty without a plea agreement. The district court calculated that Wellington had a Base Offense Level of 24, and added four levels under U.S.S.G. § 2K2.1(b)(6) for possessing a firearm in connection with another felony offense, in this case possession with intent to distribute a Schedule III controlled substance.[1] The district court's determination under § 2K2.1(b)(6) was based on the fact that the weapon was found in close proximity to the drugs, was loaded and cocked, and that the quantity of drugs "suggests something besides mere possession for personal use." This resulted in a guideline sentence of 110 to 120 months. (*Id.* at 9.) The district court ultimately sentenced Wellington to 110 months.

Wellington filed a timely appeal, challenging only the application of § 2K2.1(b)(6).

## II. ANALYSIS

Wellington argues that the district court improperly applied U.S.S.G. § 2K2.1(b)(6) to his sentence. "[F]ailing to calculate (or improperly calculating) the Guidelines range" represents a procedural error in sentencing. *Gall v. United States*, 552 U.S. 38, 51 (2007). To determine if the district court erred in applying the Guideline provision, "we generally review the district court's

---

[1] Wellington was never charged with possession, but the Application to the Guidelines make clear that the predicate offense need not be charged to qualify. *See* U.S.S.G. § 2K2.1, cmt. n.14(C) ("'Another felony offense', for purposes of subsection (b)(6)(B), means any Federal, state, or local offense . . . regardless of whether a criminal charge was brought, or a conviction obtained.")

factual findings for clear error and its legal conclusions de novo." *United States v. Taylor*, 648 F.3d 417, 431 (6th Cir. 2011) (internal quotation mark and citation omitted). With regard to the specific challenge Wellington raises—that the government failed to establish a nexus between the firearm and the predicate drug offense—we must "accord 'due deference' to the district court's determination that the firearm was used or possessed 'in connection with' the other felony, thus warranting the application of the U.S.S.G. § 2K2.1(b)(6) enhancement." *Id.* at 432.

To qualify for the § 2K2.1(b)(6) enhancement, "the government [must] establish[], by a preponderance of the evidence, a nexus between the firearm and an independent felony." *Taylor*, 648 F.3d at 432 (quoting *United States v. Angel*, 576 F.3d 318, 321 (6th Cir. 2009)). One version of this nexus is the "fortress theory," "which applies where a defendant has used a firearm to protect the drugs, facilitate a drug transaction, or embolden himself while participating in felonious conduct." *United States v. Huffman*, 461 F.3d 777, 788 (6th Cir. 2006). We have held that a close proximity between the gun and the drugs is highly probative of a nexus under the fortress theory where there is evidence of drug trafficking. *See United States v. Richardson*, 510 F.3d 622, 626 (6th Cir. 2007) (holding that a nexus is established where the defendant, gun, and drugs were all found in the same room); *United States v. Hardin*, 248 F.3d 489, 496 (6th Cir. 2001) (same).

We have also identified a category of cases where the fortress theory may not provide the nexus. In *United States v. Shields*, we identified three factors that would suggest that a proper nexus did not exist between the gun and the drugs. 664 F.3d 1040, 1045 (6th Cir. 2011) (analyzing *United States v. McKenzie*, 410 F. App'x 943, 946-47 (6th Cir. 2011)). First, circumstances where "there was no evidence that [the defendant] was engaged in drug trafficking" counsel against finding a

nexus. *Id.* (quoting *McKenzie*, 410 F. App'x at 946) (alteration in *Shields*). Second, possessing a very small quantity of drugs, particularly where the drugs have little street value, is indicative of a lack of a nexus. *Id.* Finally, a statement by the defendant "that he had the gun for personal protection," not to protect a drug stash, suggests that the gun is unrelated to the drugs. *Id.*

The record supports the district court's finding that there was a nexus between the gun and the drugs found in the vehicle. The gun was found on the floorboard in front of the driver's seat, while the drugs were under the same seat. The gun was loaded, with a round chambered and the weapon cocked, leading the district court to conclude "[t]hat's a firearm that is in a condition that is fully ready to be used." And, the district court noted that the quantity of pills "suggests something besides mere possession for personal use."

The district court was correct in finding a nexus between the gun and the drugs found in Wellington's car. While the proximity between the guns and drugs in Wellington's car is not definitive, it is probative of a nexus. Unlike in *Shields*, the district court here found that there was evidence of trafficking based on the quantity of pills and the fact that the pills were in a plastic bag as opposed to a prescription bottle. While not conclusive, these facts provide evidence of trafficking, which was not present in *Shields*. Similarly, the quantity of drugs possessed by Wellington, 49 pills, is far greater than the quantity of drugs at issue in *Shields*. The Sentencing Guidelines consider one unit of Schedule III hydrocodone to be the equivalent of one gram of marijuana. U.S.S.G. § 2D1.1, cmt. n.10(D). By contrast, *Shields* involved only 4.2 grams of marijuana—less than a tenth of the equivalent amount at issue here. 664 F.3d at 1042; *see also McKenzie*, 410 F. App'x at 944 (1.1 grams of marijuana). Finally, the fact that the weapon was found in a condition where it could be

immediately used makes it highly likely that Wellington would be "emboldened" to possess and potentially sell the pills. It is true that, as in *Shields* and *McKenzie*, Wellington argues that the gun was used for personal protection. But a weapon with a chambered round and the hammer cocked raises a strong inferrence that Wellington was prepared to use the gun while participating in felony drug sales.

According the appropriate "due deference" to the findings of the district court requires the conclusion that the government has clearly established a nexus between the gun and the drugs found in Wellington's vehicle. The sentence enhancement under § 2K2.1(b)(6) was therefore proper.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Wellington's sentence.