**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Todd SIMMONS, Defendant–Appellant.**

No. 14–2306.

United States Court of Appeals,
Sixth Circuit.

Oct. 29, 2015.

BEFORE: KEITH, CLAY, and WHITE, Circuit Judges.

CLAY, Circuit Judge.

Following his guilty plea to possession of a firearm by a person convicted of a felony in violation of 18 U.S.C. § 922(g)(1), Defendant Todd Simmons ("Defendant") challenges (1) the district court's application of the four-level sentencing enhancement pursuant to United States Sentencing Guideline § 2K2.1(b)(6)(B) and (2) the substantive and procedural reasonableness of his 96–month sentence in light of his request for a variance based on his alleged mental and physical health issues. For the following reasons, we **AFFIRM** the sentence imposed by the court.

## BACKGROUND

On February 14, 2014, officers with the Kent Area Narcotics Enforcement Team ("KANET") executed a state search warrant authorizing the seizure of any drugs, drug paraphernalia, or firearms located at the Grand Rapids, Michigan residence shared by Defendant and his fiancée, Connie Reid. After Defendant and Reid surrendered without incident, officers discovered: (1) a black case containing a Colt 5.56 × 45mm, M16 A2, automatic rifle ("rifle") located in the upstairs bedroom on the west side of the residence; (2) five rifle magazines loaded with 5.56 and .223 caliber ammunition in the west bedroom; (3) three boxes of an unspecified type of ammunition located in the upstairs bedroom on the east side of the residence; (4) a rifle magazine in the east bedroom; (5) four jars of marijuana in the east bedroom; (6) two "containers" of marijuana in the east bedroom; (7) $156.00 in cash in the east bedroom; (8) a syringe containing a brown liquid located in the kitchen; and (9) a loaded Taurus .40 caliber semiautomatic pistol ("pistol") hidden in a concealed

space within the stairwell leading to the basement. When police searched Defendant, they found $2,402.00 in cash on his person.

At the plea hearing, Defendant stated the following in support of his guilty plea. Defendant purchased both the rifle and the pistol "from somebody off the streets." (R. 53, Plea Hr'g Tr., PageID # 203–04). Normally, both firearms were kept in a bag, along with a tactical vest, in Defendant's bedroom closet. Defendant did not keep the firearms loaded, but stored ammunition in the same location. However, on the day KANET officers executed the search warrant, Defendant removed the pistol from its usual location and went to the basement with the intention of committing suicide. After reconsidering, Defendant "stuck the gun in the wall" and surrendered. (*Id.* at 202).

On February 14, 2014, the government filed a criminal complaint charging Defendant with being a convicted felon in possession of one or more firearms in violation of 18 U.S.C. § 922(g)(1). Approximately two months later, the government filed a superseding felony information charging the same offense. Pursuant to a plea agreement, Defendant pleaded guilty before a magistrate judge. The magistrate judge issued a Report and Recommendation advising that Defendant's guilty plea be accepted, and the district court accepted the plea of guilty.

The presentencing probation officer filed an initial presentence report ("Initial PSR") on June 16, 2014. Following Defendant's objections to the Initial PSR, the probation officer filed a final presentence report ("Final PSR") on July 31, 2014. In his objections, Defendant disputed the Initial PSR's statement that KANET, through an unidentified criminal informant ("CI"), had conducted eight controlled purchases of illicit substances from Defendant.

The objected-to paragraph in the Initial PSR stated:

As a way of background, KANET began investigating [Defendant] after receiving information from a confidential informant (CI) that [Defendant] was trafficking marijuana from his residence and in possession of firearms. The CI reported he/she previously observed about ½ pound of marijuana inside [Defendant's] residence and also observed the defendant handling a fully automatic M16 rifle and two .40 caliber handguns. The CI stated [Defendant] told him/her the M16 rifle was stolen from the 44th Street Armory. *KANET subsequently conducted eight controlled buys of controlled substances from [Defendant] through the CI.*

(R. 30, Initial PSR, PageID # 54) (emphasis added). In objecting to this paragraph, Defendant asserted:

KANET did not conduct eight controlled buys from [Defendant]. The CI had eight controlled buys during the course of his work with KANET. Those eight unrelated buys were the basis of the CI's credibility in the search warrant which authorized the search of [Defendant's] home. You have the buys as being with [Defendant].

(R. 32, Objections to PSR, PageID # 73).

Defendant also objected to paragraph 38 of the Initial PSR, which described a four-level enhancement to Defendant's base offense level pursuant to U.S.S.G. § 2K2.1(b)(6)(B). Paragraph 38 of both PSRs identified the felony associated with Defendant's unlawful possession of the firearms as "possession with intent to distribute marijuana," but neither cited a federal, state, or local statute underlying this drug-related crime. (R. 30, Initial PSR, PageID # 57; R. 33, Final PSR, PageID # 81). In his objections, however, the only issue Defendant identified regarding the

application of the enhancement was that his possession of the firearms was not "in connection with another felony offense" because the firearms were not in "close proximity" to the marijuana. (R. 32, Objections to PSR, PageID # 73). In this vein, Defendant maintained that "[w]hile some ammunition was found in the same bedroom as the drugs, the firearms were not in the same bedroom." (*Id.*).

The Final PSR, which was filed after Defendant made the aforementioned objections, omitted any reference to the CI *purchasing* marijuana from Defendant as part of a controlled buy, but noted that the CI had observed a half-pound of marijuana in Defendant's residence. The Final PSR also explicitly stated that the CI's more general statement that Defendant was "trafficking marijuana from his residence" remained undisputed because Defendant "did not raise an objection to the[ ] [statement's] factual accuracy." (R. 33, Final PSR, PageID # 78, 96).

Regarding Defendant's mental and physical health, the Final PSR noted that Defendant reportedly attempted to commit suicide by jumping in front of a moving vehicle on an unspecified date in 2011. Following this incident, Defendant claimed, he was "in a coma for three months" and "formally diagnosed as bipolar and manic depressive." (R. 33, Final PSR, PageID # 90). At a separate, unspecified point in time, Defendant was prescribed the medications Risperdal and Paxil "to manage his mental health issues." (*Id.*). According to the Final PSR, Defendant believed "his mental health problems [we]re attributable to the beginning stages of Huntington's disease[,] ... a hereditary brain disorder that leads to severe physical and mental disabilities." (*Id.*) (quotation marks omitted). However, although Defendant's mother "purportedly suffered from [Huntington's disease]," Defendant

had not been tested for or diagnosed with that condition. (*Id.*).

On August 22, 2014, Defendant filed a motion to adjourn sentencing pending a neurological examination and genetic testing to ascertain whether he had symptoms of Huntington's disease or possessed the gene underlying the disease. In his supporting memorandum, Defendant (1) noted that every child of a parent with Huntington's disease has a "50/50 chance of inheriting the expanded gene that causes the disease," (2) expressed his belief that he was already experiencing symptoms of the disease based on his 2011 suicide attempt and diagnosis as bipolar or manic depressive, and (3) contended, without further elaboration, that "an evaluation ... prior to sentencing would be helpful to the court's assessment of the factors envisioned in 18 U.S.C. § 3553(a)(1)." (R. 36–1, Mem., PageID # 102–03). In an order issued August 25, 2014, the district court adjourned Defendant's sentencing hearing and instructed Defendant to file a supplemental brief documenting the types of tests required to screen Defendant for Huntington's disease, as well as identifying the persons who would perform and pay for these tests.

In his supplemental brief, Defendant informed the court that mandatory protocol for Huntington's disease requires that prior to any genetic testing, patients not currently exhibiting neurological symptoms undergo psychological counseling and evaluation, followed by a neurological examination or genetic counseling. Defendant explained that this process could "take upwards of six months," and asserted that the only viable alternative was enlisting a neurologist to examine Defendant for symptoms, which would cost $200, and then paying for any further genetic testing ordered by the neurologist, which would likely cost another $300. Defen-

dant concluded that this second course of action, which called for (1) a six to eight-week waiting period before Defendant could see the next available .neurologist, (2) transportation by the United States Marshals or furlough from detention to facilitate Defendant's appointments with the neurologist, and (3) fees totaling approximately $500, was the "only . . . reasonably available pathway to the testing." (R. 38, Suppl. Br., PageID # 107). After reviewing Defendant's supplemental brief, the district court denied the motion for a medical examination on the grounds that "[t]he examination . . . described in defendant's supplemental submission [wa]s nearly impossible to obtain in any reasonable time frame before sentencing and would not assist the Court in any tangible way in its assessment of [the 18 U.S.C. § ] 3553 factors." (R. 39, Suppl. Order, PageID # 108).

On October 2, 2014, Defendant filed a motion for a variance and sentencing memorandum asserting that "the factors enumerated in 18 U.S.C. § 3553(a) . . . warrant[ed] a sentence below the guidelines." (R. 42, Sentencing Mem., PageID # 111). The sentencing memorandum also reiterated Defendant's objection to the application of a § 2K2.1(b)(6) enhancement solely on the basis that there was an insufficient nexus between the possession of firearms and the drug possession.

At the sentencing hearing, the district court advised the parties that it had tentatively calculated Defendant's case as Offense Level 25, Criminal History Category IV under the United States Sentencing Guidelines, resulting in an advisory guideline range of 84 to 105 months' imprisonment. This was also the range reflected in the Final PSR. In challenging the proposed four-level enhancement under § 2K2.1(b)(6), Defendant argued that there was no indication that the half-pound of marijuana observed at Defendant's residence had "any connection with [his] gun possession." (R. 47, Sentencing Hr'g Tr., PageID # 125). Defendant emphasized that (1) the marijuana was found in a bedroom in which no weapons were found, (2) ammunition, without a compatible firearm, could not have "any effect whatsoever" in furthering a felony, and (3) a half-pound of marijuana was "not a huge amount of drugs" and therefore did not support the government's "fortress theory." (R. 47, Sentencing Hr'g Tr., PageID # 125–26, 130). Defendant also reiterated his request for a variance based on the "mental illness component [of] [ ]his case," noting that he was currently taking Celexa and Risperdal for his "mental illness issues" and had a family history of Huntington's disease. (Id. at 133). Arguing that his case was "not terribly egregious," but instead involved "the simple possessing of guns when he was prohibited from doing so," Defendant asserted that a sentence below the advisory guideline range was "perhaps" warranted. (Id. at 134).

The district court ultimately rejected Defendant's entreaty for a variance from the guideline range, finding that "[a] sentence towards the middle of the advisory guideline range [was] the appropriate sentence." (Id. at 140). The court based this conclusion on several considerations, including (1) Defendant's criminal history, (2) the need to specifically deter Defendant, who had served a previous sentence related to a weapons violation and presented a "high risk to re-offend," and (3) protection of the public. (Id. at 138–39). The court also opined that "possession of drugs with intent to deliver and possession of firearms is a toxic mix." (Id. at 140). In acknowledgment of Defendant's mental health concerns, the district court recommended that Defendant be evaluated and receive appropriate treatment for his medical issues, including his possible

Huntington's disease, and that Defendant be enrolled in substance abuse treatment. Ultimately, the district court entered a judgment sentencing Defendant to 96 months of incarceration, plus two years of supervised release. Defendant timely appealed.

## DISCUSSION

### I. Application of the Sentencing Enhancement

#### a. Standard of Review

In his objections to the Initial PSR, his sentencing memorandum, and at sentencing, Defendant disputed the applicability of the § 2K2.1(b)(6) enhancement on the grounds that there was an insufficient nexus between the firearms and a separate felony offense. However, Defendant concedes that he did not object to the enhancement based on the alleged lack of proof supporting the independent felony. *Appellant's Br.* at 29.

In general, when a defendant objects to the trial court's application of a sentencing enhancement, this Court reviews for abuse of discretion. *United States v. Wright,* 464 Fed.Appx. 475, 481 (6th Cir.2012) (citing *Gall v. United States,* 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). However, we apply a more nuanced standard to challenges to a § 2K2.1(b)(6) enhancement. One prerequisite for applying the enhancement is "a nexus between the firearm and an independent felony." *United States v. Burns,* 498 F.3d 578, 580 (6th Cir.2007). In reviewing a court's fact-specific findings regarding the existence of a nexus, we accord "due deference to the district court's determination that the firearm was used or possessed in connection with the other felony." *United States v. Taylor,* 648 F.3d 417, 431–32 (6th Cir.2011) (inter-

nal quotation marks omitted); *United States v. Wellington,* 468 Fed.Appx. 529, 531 (6th Cir.2012). The district court's factual findings are reviewed for clear error. *Taylor,* 648 F.3d at 432. "A factual finding is clearly erroneous if, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Woods,* 26 Fed.Appx. 448, 450 (6th Cir. 2001) (quoting *United States v. Gort–Di-Donato,* 109 F.3d 318, 320 (6th Cir.1997)).

#### b. Sufficiency of the Nexus Between the Firearms and an Independent Felony

■ Defendant argues that "a close review of the case law and the guideline[s]" reveals that the district court's application of the § 2K2.1(b)(6) enhancement was erroneous because (1) the government's fortress theory could not support application of the enhancement where only ammunition, and not the firearms themselves, was found in "close proximity" to the marijuana and (2) there was no proof of the independent offense—possession with intent to distribute marijuana—nor identification of a statute governing such an offense. *Appellant's Br.* at 15–16, 20–22, 30–31, 36–37. In response, the government contends that the presence of several containers of marijuana in Defendant's residence, the discovery of approximately $2,500 in cash on Defendant's person and in his bedroom, Defendant's modest source of legitimate income,[1] the CI's undisputed statement that Defendant was trafficking marijuana from his home, and the proximity of Defendant's firearms and ammunition to the marijuana, all supported the district court's finding that the § 2K2.1(b)(6) en-

---

**1.** According to the Final PSR, Defendant's only source of income at the time of his arrest

was Social Security Disability benefits in the amount of $670.00 per month.

hancement applied. *Appellee's Br.* at 15–17, 19–24. The government also asserts that the district court properly relied on these facts, and any reasonable conclusions drawn therefrom, because these facts were included in the Final PSR and not contested by Defendant. *Appellee's Br.* at 15.

"The Guidelines provide for a four-point enhancement to the defendant's base offense level '[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense.'" *Taylor,* 648 F.3d at 432 (quoting U.S.S.G. § 2K2.1(b)(6)). Although § 2K2.1(b)(6) does not define the phrase "in connection with," the accompanying application note states that the enhancement should be applied "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense." U.S.S.G. § 2K2.1(b)(6) cmt. n. 14(A); *United States v. Angel,* 576 F.3d 318, 321 (6th Cir.2009). "[I]n the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug manufacturing materials, or drug paraphernalia," application of the enhancement may be warranted "because the presence of the firearm has the potential of facilitating another felony offense." U.S.S.G. § 2K2.1(b)(6) cmt. n. 14(B)(ii). "[T]he presence of drugs in a home under a firearm conviction does not *ipso facto* support application of [the] enhancement," *Taylor,* 648 F.3d at 432 (citation and internal quotation marks omitted), and application "is *not* warranted if possession of the firearm 'is merely coincidental to the underlying felony offense.'" *United States v. Seymour,* 739 F.3d 923, 929 (6th Cir.2014) (citation omitted) (emphasis added). Thus, for a district court to appropriately apply the § 2K2.1(b)(6) enhancement, the government must show, by a preponderance of the evidence, a nexus between the firearm and an independent felony. *Angel,* 576 F.3d at 321.

Under the fortress theory, a sufficient nexus is established if it reasonably appears that firearms found on the premises, which are owned, controlled, or possessed by the defendant, "are to be used to protect the drugs or otherwise facilitate a drug transaction." *United States v. Ennenga,* 263 F.3d 499, 503 (6th Cir.2001) (citation and internal quotation marks omitted). "Put differently, § 2K2.1[ (b)(6) ] applies if the firearm had some emboldening role in a defendant's felonious conduct." *Angel,* 576 F.3d at 321 (citation and internal quotation marks omitted). Courts in this Circuit consider many factors in determining whether the fortress theory applies, including the proximity of the firearm or ammunition to drugs or drug paraphernalia, *Ennenga,* 263 F.3d at 503–04; *Angel,* 576 F.3d at 321–22, the possession of large amounts of cash in close proximity to the drugs, *Seymour,* 739 F.3d at 930, the amount of drugs in defendant's possession, *id.* at 930–31; *United States v. Shields,* 664 F.3d 1040, 1045 (6th Cir.2011), the type of firearm and whether it was loaded, *Taylor,* 648 F.3d at 433; *see also United States v. Mackey,* 265 F.3d 457, 462 (6th Cir.2001), and whether the defendant's possession of the firearm was legitimate or illegal, *Mackey,* 265 F.3d at 462.

In overruling Defendant's objection to the enhancement, the district court observed that the presence of more than one firearm in Defendant's residence, ammunition in the same room as the marijuana, and approximately $2,500 in cash in the house, supported a finding that the fortress theory applied. The court also asserted that the half-pound of marijuana in Defendant's residence, as observed by the CI, was a sufficient quantity for the court to infer, under a preponderance of the evidence standard, possession with intent to distribute on the part of Defendant.

Citing the majority holding in *United States v. Coleman,* 627 F.3d 205, 212–14 (6th Cir.2010), the district court opined that Defendant's "possession of ammunition in close proximity to the marijuana [wa]s sufficient for the application of the enhancement" when considered with these other facts. (R. 47, Sentencing Hr'g Tr., PageID # 131–32). Finally, in addition to the aforementioned findings of fact, the district court erroneously stated that Defendant had failed to object to the Initial PSR's statement that he was "selling marijuana to a CI." (*Id.* at 130).

Unsurprisingly, Defendant takes issue with the district court's unfounded assertion that he did not object to the Initial PSR's allegation that the CI purchased marijuana from him. *Appellant's Br.* at 24, 33–34. Indeed, Defendant is correct that the district court erred when it made this finding. Although the Initial PSR referenced KANET conducting eight controlled buys from Defendant through the CI, following Defendant's objection that the controlled buys did not actually involve him, the Final PSR omitted any allegation of controlled purchases from Defendant.

This error alone, however, does not render the district court's finding that Defendant was trafficking marijuana from his residence clearly erroneous. Under the clear error standard, we look at the *entirety* of the evidence to determine whether a mistake has been made, *Woods,* 26 Fed. Appx. at 450, and "[c]lear error will only be found where, after reviewing all the evidence, we are left with the 'definite and firm conviction that a mistake has been

made.'" *United States v. Woodard,* 337 Fed.Appx. 534, 537 (6th Cir.2009) (citation omitted). Here, as indicated by the government, *Appellee's Br.* at 17, Defendant never objected to, and the Final PSR therefore included, the CI's statements that (1) Defendant "was trafficking marijuana from his residence" and (2) the CI had observed a half-pound of marijuana inside Defendant's residence. (R. 33, Final PSR, PageID # 78; R. 32, Objections to PSR, PageID # 73). These allegations, and not just the jettisoned statement about the controlled buys, constituted "admitted conduct by the defendant contained in the presentence report" on which the court relied. (R. 47, Sentencing Hr'g Tr., PageID # 131).

District courts may accept uncontested factual allegations presented in a presentence report and draw reasonable conclusions therefrom. *United States v. Mitchell,* 63 Fed.Appx. 224, 229–30 (6th Cir. 2003); *see also United States v. Vonner,* 516 F.3d 382, 385 (6th Cir.2008) (en banc) ("By failing to object to the presentence report, [a defendant] accept[s] all of the factual allegations contained in it"); *United States v. Carter,* 355 F.3d 920, 925 (6th Cir.2004) ("The district court is allowed to accept as true all factual allegations in a presentence report to which the defendant does not object.") (citation and quotation marks omitted). Here, although Defendant objected to the allegation that he sold illicit substances to the CI as part of any controlled buy, he did not contest that he was trafficking marijuana from his residence.[2] Further, the district court drew

---

2. We are unpersuaded by Defendant's argument that he was not required to object to the CI's statements about his alleged marijuana trafficking because they constituted hearsay. *Appellant's Br.* at 23–24, *Appellant's Reply* at 3–4. Courts may rely on hearsay statements contained in a PSR where they are sufficiently reliable. *United States v. Williams,* 601 Fed.

Appx. 423, 425 (6th Cir.2015) (citing *United States v. Moncivais,* 492 F.3d 652, 658–59 (6th Cir.2007)); *accord* U.S.S.G. § 6A1.3(a). Further, Defendant provides no support for his bald assertion that these statements lacked sufficient indicia of reliability. *See Appellant's Br.* at 35–36.

the reasonable conclusion that Defendant was trafficking based on the half-pound of marijuana the CI observed in Defendant's residence—another factual allegation Defendant failed to contest. In light of Defendant's failure to dispute these factual allegations, we conclude that the evidence on which the district court properly relied, viewed in its entirety, does not give rise to a "definite and firm conviction" that the district court erred in its finding that the enhancement was applicable based on the independent felony of possession with intent to distribute marijuana. *Woodard*, 337 Fed.Appx. at 537. Thus, we find that there was no clear error.

The other facts supporting the district court's acceptance of the fortress theory and application of the § 2K2.1(b)(6)(B) enhancement are more straightforward. Defendant's rifle and five rifle magazines were located in the upstairs west bedroom, while the six containers of marijuana found in the house were located in the upstairs east bedroom. This Court has affirmed the application of the § 2K2.1(b)(6)(B) enhancement where the drugs and firearms at issue were less proximate. *See, e.g., Ennenga*, 263 F.3d at 500–01, 503–04 (defendant stored his marijuana plants in the furnace room and in the bed of a pickup truck parked outdoors, kept a small amount of marijuana in the bedside cabinet of his basement apartment, and maintained five firearms, with ammunition, in a locked locker located in the hallway of the basement); *Taylor*, 648 F.3d at 433 (firearm was not found in the same room as the drugs, but defendant was trafficking drugs from his house and the firearm was loaded and found on the floor of his bedroom). Further, although the firearms were not loaded, Defendant routinely kept the rifle and the pistol in the same location as the ammunition—the west bedroom closet—another consideration supporting the district court's acceptance of the for-

tress theory. *See Angel*, 576 F.3d at 319–20, 322 (affirming application of the enhancement where the defendant stored ammunition in nightstand next to his bed and kept a total of three firearms, only one of which was loaded, in the bedroom); *Coleman*, 627 F.3d at 208, 212–13 (affirming application of the enhancement where no firearms were found but the defendant stored 23 live rounds of ammunition in the same location where he stored marijuana). Finally, although Defendant was unemployed between 2011 and his arrest in February 2014, and his only documented source of legitimate income was $670.00 per month in Social Security Disability benefits, he had approximately $2,500 in cash—on his person and in the east bedroom—on the day KANET executed the search warrant. Such a large amount of cash in close proximity to the marijuana, particularly in light of Defendant's modest income, supports application of the enhancement. *See Seymour*, 739 F.3d at 930. Taken together, and viewed under the deferential standard applied to § 2K2.1(b)(6) enhancements, *Taylor*, 648 F.3d at 431–32, we find that the undisputed facts support the district court's conclusion that Defendant unlawfully possessed firearms in connection with drug trafficking and conclude that the district court's application of the § 2K2.1(b)(6) enhancement was proper.

### c. Identification of the Independent Felony

██ In his briefs and at oral argument, Defendant focused on the government's failure to identify a federal, state, or local law underlying Defendant's alleged possession with intent to distribute marijuana. *Appellant's Br.* at 30–31, 36–40; Oral Arg. at 1:37–2:52. Indeed, there is no indication that the government ever identified a statute associated with Defendant's alleged

drug felony in this case. However, for the reasons stated below, we find that the government's decision not to identify the underlying *statute* at issue, where the *felony* itself was identified in the PSR and at sentencing, though far short of best practices, was not fatal to the district court's application of the enhancement.

Defendant relies primarily on this Court's holdings in *United States v. Bullock*, 526 F.3d 312 (6th Cir.2008), *abrogated on other grounds by Taylor*, 648 F.3d at 431, and *United States v. Ford*, 571 Fed. Appx. 378 (6th Cir.2014), to support his assertion that the government was required to identify the statute and statutory elements underlying his alleged possession with intent to distribute marijuana in order for the district court to apply the § 2K2.1(b)(6) enhancement. *See Appellant's Br.* at 37–38. Neither case so holds. In *Bullock*, we addressed the defendant's argument that the district court engaged in "double counting" when it applied the § 2K2.1(b)(6) enhancement because "all firearms by definition are capable of facilitating another felony offense." 526 F.3d at 315. We observed that rather than permitting federal judges to punish defendants more severely based on the unlawful possession of a firearm, standing alone, the § 2K2.1(b)(6) enhancement applies only to "those particular defendants whose unlawful firearm possession has created a heightened risk of violence" due to the firearm's connection with an independent felony. *Id.* at 316–17. In that vein, we noted that "[w]hile the particular independent felony need not be charged, the felony must be specifically identifiable in order for the government to demonstrate that 'the defendant possessed or used a gun in connection with' it." *Id.* at 317 (citations

omitted). Nothing in *Bullock* stands for the proposition that the government must cite a relevant *statute* in order to fulfill its obligation to identify the specific *felony* at issue. Although citation, in most cases, would either facilitate or prove essential to both the district court's analysis and our own, *Bullock* does not mandate citation and we see no reason to impose such a requirement today where Defendant's independent felony—marijuana trafficking—was one of the uncontroverted allegations in the Final PSR on which the district court permissibly relied in making its findings of fact.[3]

*Ford* is similarly unhelpful to Defendant's position. There, the independent felony offense supporting the § 2K2.1(b)(6)(B) enhancement was felonious assault. *Ford*, 571 Fed.Appx. at 379. At sentencing, the defendant argued that the elements of felonious assault had not been met because there was no proof that he knowingly or intentionally caused the victim to reasonably fear imminent bodily injury. *Id.* at 379–80, 382. Despite the defendant's arguments, the district court never affirmatively found that there was sufficient evidence to conclude that the defendant caused the victim to reasonably fear bodily harm. *Id.* at 382. Based on the district court's failure to find that the elements of felonious assault were met despite the controverted factual record, this Court vacated the defendant's sentence and remanded for re-sentencing. *See id.* at 382 (stating that once the defendant indicated that the element of reasonable fear had not been proven, "it became incumbent upon the court to 'affirmatively rule' on the 'controverted matter'"); *see also* Fed.R.Crim.P. 32(i)(3)(B) (requiring district courts to either rule on disputes

---

**3.** We confine our holding to the unique facts of this case and note that in the vast majority of cases, it would be highly ill-advised for the

government to seek a § 2K2.1(b)(6) enhancement without identifying the statute underlying the alleged independent felony.

involving controverted portions of a sentencing report or explicitly find that such a ruling is unnecessary).

Here, both the Final PSR and the district court identified the independent felony supporting the application of the § 2K2.1(b)(6)(B) enhancement as possession with intent to distribute marijuana. In his written objections and at sentencing, Defendant neither disputed that the elements of this independent felony were met, nor indicated that the government should be required to cite the federal, state, or local law underling this felony.[4] Additionally, Defendant did not contest or dispute the CI's statements, contained in both the Initial and Final PSRs, that Defendant was trafficking marijuana from his residence and had a half-pound of marijuana therein. Due to Defendant's failure to identify any controverted matter regarding the independent felony supporting the enhancement prior to this appeal, we find the rationale for reversal pronounced in *Ford* inapplicable to the facts of this case and conclude that the district court properly accepted as true the factual allegations in the Final PSR that Defendant was trafficking marijuana from his residence. *See* Fed.R.Crim.P. 32(i)(3)(A) ("At sentencing, the court ... may accept any undisputed portion of the presentence report as a finding of fact"); *Vonner*, 516 F.3d at 385.

## II. Procedural and Substantive Reasonableness of the Sentence

Defendant argues that his 96–month sentence is procedurally and substantively unreasonable because the court "effectively refused" to consider his request for a variance based on his alleged mental and physical health issues. *Appellant's Br.* at 42. Because Defendant answered "no" to the court's inquiry as to whether he had any legal objections to the sentence imposed, we review Defendant's procedural unreasonableness claim for plain error. *United States v. Wallace*, 597 F.3d 794, 802 (6th Cir.2010).[5] Defendant's substantive unreasonableness claim is reviewed for abuse of discretion. *United States v. Solano–Rosales*, 781 F.3d 345, 355–56 (6th Cir.2015).

■ Defendant argues that the sentence imposed by the district court was procedurally unreasonable because the court did not provide a sufficiently "extensive" explanation as to why it denied Defendant's motion to adjourn sentencing pending a medical evaluation and motion for a variance based on his purported health issues. *Appellant's Br.* at 46–47; *Appellant's Reply* at 9–10. Additionally, Defendant maintains that the district court's failure to order a medical evaluation made it impossible for the court to properly account for Defendant's medical history and therefore resulted in a sentence that was substantively unreasonable because it was greater than necessary under the factors enumerated in 18 U.S.C. § 3553(a). *See Appellant's Br.* at 46–48.

"[A] sentence may be procedurally unreasonable if the district court did not consider the applicable Guidelines range or neglected to consider the factors set forth in 18 U.S.C. § 3553(a)[ ] and instead

---

4. As observed by Defendant himself, *Appellant's Br.* at 36, Michigan Compiled Laws § 333.7401, is one statute the government presumably could have cited when it identified Defendant's alleged drug crime. Under this statute, possession with intent to deliver marijuana in an amount of five kilograms or less is punishable by imprisonment of not more than four years. Mich. Comp. Laws § 333.7401(2)(d)(iii).

5. District courts are advised to make such inquiries pursuant to our holding in *United States v. Bostic*, 371 F.3d 865 (6th Cir.2004). *See United States v. Batti*, 631 F.3d 371, 379 n. 2 (6th Cir.2011); *Wallace*, 597 F.3d at 802.

**376**

simply chose a sentence that the judge deemed appropriate." *United States v. Vowell*, 516 F.3d 503, 510 (6th Cir.2008); *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir.2007). Similarly, "[w]hen a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *Bolds*, 511 F.3d at 580 (citation and internal quotation marks omitted). Overall, "[t]he district court must provide an articulation of the reasons [it] reached the sentence ultimately imposed," that "allow[s] for meaningful appellate review." *Solano–Rosales*, 781 F.3d at 351 (citation and internal quotation marks omitted).

After hearing from the parties at sentencing, the district court noted that it had "considered all of the defendant's arguments in support of his request for a lower sentence," as well as "the nature and circumstances of the offense, and the history and characteristics of the defendant." (R. 47, Sentencing Hr'g Tr., PageID # 136). In light of these considerations, and the other factors articulated under 18 U.S.C. § 3553(a), the court (1) recommended that Defendant receive a mental health evaluation, counseling, and appropriate treatment while in prison, (2) suggested that his mental health needs and treatment take priority over assuring that he be imprisoned close to home, and (3) required Defendant to participate in "a program of mental health treatment," as directed by his probation officer, as part of his supervised release. With regard to other factors properly considered under § 3553(a), the court articulated concerns about Defendant's potential to re-offend in light of his past convictions for weapons-related crimes—including his conviction for assault with intent to murder—and expressed doubt about whether Defendant would avoid future weapons violations.

Based on Defendant's "high risk to re-offend," the court concluded that protection of the public and specific deterrence of Defendant were "significant" factors in its determination that a sentence in the middle of the advisory guidelines range was appropriate. (R. 47, Sentencing Hr'g Tr., PageID # 139–41). On this basis, the court denied Defendant's motion for a variance, finding that the factors favoring a variance were "significantly outweighed" by other factors that favored a sentence within the advisory guideline range. (*Id.* at 141–43).

In his reply brief, Defendant cites *United States v. Wallace*, 597 F.3d 794 (6th Cir.2010), for the proposition that the district court was required to both consider, and explain its reasons for rejecting, Defendant's motion for a variance. *Appellant's Reply* at 9–10. Indeed, in *Wallace*, this Court held that "[w]hen a defendant raises a particular[, nonfrivolous] argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." 597 F.3d at 803 (second alteration in original) (quoting *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir.2009)). However, the record before us belies Defendant's argument that the district court failed to consider the motion for a variance or explain its reasons for denying it. Thus, there is no indication that Defendant's sentence was procedurally unreasonable.

■ "[R]eview of a sentence for substantive reasonableness 'requires inquiry into ... the length of the sentence and the factors evaluated ... by the district court in reaching its sentencing determination.'" *United States v. Cochrane*, 702 F.3d 334, 345 (6th Cir.2012) (citation omitted). In making the substantive reasonableness inquiry, we examine the totality of the circumstances, including whether

the sentence imposed by the district court deviates from the advisory guidelines range. *Id.* Because Defendant's 96–month sentence falls within the advisory guideline range of 84 to 105 months, we accord it a presumption of reasonableness. *United States v. Douglas,* 563 Fed.Appx. 371, 376 (6th Cir.2014).

Defendant argues that the sentence imposed by the district court is substantively unreasonable due to the court's failure to adequately account for the possibility that he had "life threatening Huntington's Disease." *Appellant's Br.* at 44–46. Defendant also maintains that his sentence is substantively unreasonable because, due to the district court's failure to order a medical evaluation following his motion to adjourn sentencing, the court was "uninformed [about] [Defendant's] medical history and current health status and thus a valid § 3553 analysis could not be made." *Appellant's Br.* at 48.

With regard to Defendant's second argument, Defendant does not cite, and we are not aware of, any authority to support the proposition that a sentence is substantively unreasonable if a district court fails to order a medical test or examination that would shed more light on the Defendant's history or characteristics pursuant to 18 U.S.C. § 3553(a)(1). Further, the district court's sentence clearly accounted for Defendant's mental health concerns, related or unrelated to Huntington's disease, and Defendant has provided no argument or authority for his apparent position that his mental health problems should have resulted in an automatic reduction of his sentence. To the contrary, this Court has consistently upheld sentences as substantively reasonable—even where the defendant had well-documented psychiatric problems—as long as the sentence accounted for the defendant's mental health concerns *and* the other factors listed under 18 U.S.C. § 3553(a). *See, e.g., United*

*States v. Infante–Cabrera,* 538 Fed.Appx. 706, 707–08 (6th Cir.2013); *United States v. Nesbitt,* 390 Fed.Appx. 497, 500–03 (6th Cir.2010).

As indicated, when the district court imposed the 96–month sentence at issue, it considered Defendant's mental health issues and possible Huntington's disease, the type of medical care Defendant would receive while in custody and as part of his supervised release, Defendant's previous weapons-related convictions, the seriousness of the pending charge against him in light of those convictions, the need to specifically deter Defendant from committing future weapons-related offenses, and the importance of protecting the public. Based on these considerations, the court arrived at a sentence that fell in the middle of the advisory guideline range. We find that the sentence is substantively reasonable in light of the § 3553(a) factors.

## CONCLUSION

For the reasons stated in this opinion, we **AFFIRM** the district court's sentence.